Good morning, Your Honor. Cresta Daly on behalf of Mr. Gabriele Plage. What Mr. Porter and I would like to do if it's acceptable with the court is I will argue for seven minutes. He will argue for one and we will reserve two minutes for rebuttal. All right, good luck. We'll try to make that work. I'll do my best, Your Honor. Can you see the clock on the screen? I can see the clock. Yes. All right. Thank you. You may proceed. Thank you. May it please the court. The issue in this case is very simple. It's whether or not the evidence in this case meets the definition of 18 U.S.C. 1029 E. And I submit to you that it does not. The parties, I think, are in agreement about what the evidence is. Essentially, Mr. Gabriele Plage and his co-defendant, Mr. Gainza, inserted skimmers into ATM machines in an attempt to capture account numbers. Then they had a camera off to the side where they were attempting to capture PIN numbers. But the only evidence of what they actually obtained in this case is a statement from the banks. It says 754 account numbers were accessed. And so there's no evidence that they obtained account numbers, which is there's a I think there's an error in the government's brief because at page 25, they said Gabriele Plage possessed card numbers. That is not true. Never possessed any card numbers. No, there's no evidence of that, which is evidence they accessed these accounts. Now 1029 in its definition of an unauthorized access device is it has to be an account number for other information to access an account. There's not a I mean, this is sort of a unique situation in the typical 1029 case, right? Somebody's got 40 credit card numbers or lists of account numbers. So there's not a lot of case law defining precisely what is required. But it has to be usable. I mean, that's what Onyeso says is the information that was obtained has to be usable. And what in your view, what kind of we have the numbers that we have the bank testimony about saying it with these accounts were what actually obtained or accessed? What in your view would be the minimum evidence required for this particular chart? An account number, an ATM pin number, some piece of personal identifying information. Something I mean, that's the problem. There's there's really nothing. There's Mr. Gabriele Plage. And to be clear, he intended to get this purpose. But there has to be something that he could take and then do. And what he has is nothing, right? He accessed accounts. There's no evidence that he captured the account numbers. Well, counsel, given that the guidelines contemplate the greater of either the actual loss or the intended loss, based on the evidence in the record, could the district court have arrived at roughly the same numbers on an intended loss theory? Or would we still run into the problem of not knowing what percentage of the accounts access or how successful the skimming scheme really was? Right, I think and I think that's, I think that's the problem. I think that got conflated at the district court level, because you can't get to the $500 per, per account or per unless there's unless you've established that there's something usable, right? And they don't that's, and that's the problem. They don't they don't have anything that's usable. So there's no way to get to the intended loss calculation. Is there another provision in the criminal statute that would make simply access unauthorized access but without doing anything with a crime? Um, there might be I don't know, but I do know that the government proceeded under 1029, which requires a usable unauthorized access device, right? And that's what they don't have in this case. And if you look at, you know, the other case, I think it though, if you had an expert who came in and said, I know, I know these kind of devices. And I've looked at these. And here's a rough percentage of success. When you do this, etc. Would that be enough then to show the elements of this crime if there had been such an outside expert or someone else, a bank person testifying on that point? Possibly, I mean, if there was, you know, if somebody said, you know, when you access an account, you get X, Y, and Z information, and it's usable in this manner, then presumably, government would have met its burden. But the government didn't do that. They just provided a statement that says, you know, there's these unauthorized, they accessed these accounts. And so with with that, how do you square how do you square your argument with the fact that the defendant pled guilty? Because he intended, I mean, he he intended to do this. This was he attempted to commit this crime. He wasn't charged with attempt, was he? No, he wasn't. But sorry, but attempt is usually pled guilty to actually doing it. Isn't that what he pled guilty to? No, the factual basis was actually written very, very carefully, so that we did not, we did not concede that he obtained this information. We conceded that he inserted the skimmer that he attempted to do these things, but we never conceded that he actually obtained any useful information. I mean, we thought long and hard about that factual basis when we were aware of this issue. So I think I mentioned on yes, so and that's the case that requires, you know, some proof of usability. And and the government hasn't provided any proof of usability, right? They've just, we're kind of back to the same thing. He said these accounts were accessed, but there's no way to get from it was usable. And in other 1029 cases in this circuit, this this court has required something. So like in the Wynn case, which is the 1996 Ninth Circuit case, 81 F. 3rd, 912 at 914 and 915, the defendant had 110 blank credit cards, and the court found that was usable under as defined by the statute. And the defendant also had account numbers and embosser, and she had conspired to obtain encoder. She had some information that was usable, and she was in the process of trying to obtain additional information. And that's the scenario that we don't have in this case. They have nothing that is useful. You want to the next minute to Mr. Porter, please. Thank you, Your Honor. In response to Judge McEwen's question, we're in a little bit different situation than our codefendant. There is evidence here of actual loss. The government did put on evidence that there were 37 account holders and that $20,781, $20,781.60 actual losses were incurred in those accounts. So that was sufficient. We agree that that number can be used for the amount of loss. But otherwise, we're similarly situated to the codefendant, and I join in the arguments of code counsel. Your position is that that actual loss would be the basis for the sentencing foundation? Yes, the specific offense characteristic for amount of loss. Yes. Thank you. If there are no questions, I will submit it, ask the court to reverse and remand for resentencing as soon as possible. Thank you. Fogarty. Good morning. May it please the court, Brian Fogarty on behalf of the United States. I'd like to respond just first to Ms. Daly's argument about the actual possession of access devices by  Mr. Gabriel Plage's factual basis to his plea. He in fact did admit that he possessed access devices in connection with the scheme that's set forth at SCR 2. That's consistent with Mr. Gaines's admission and his factual basis that he also was successful as part of the conspiracy. So to begin, the evidence of the possession that the conspirators actually obtained the access devices that they undeniably sought to obtain is their admission in connection with their guilty plea. The second part is that the undisputed evidence demonstrates that they repeated their scheme in exactly the same way without altering their methods over a significant period of time for Mr. Gaines and for a relatively short period of time for Mr. Gabriel Plage, although part of the same conspiracy. That's sufficient evidence along with the concession by both defendants that the conspirators actually obtained PIN numbers and ATM card numbers that they used to raid customer accounts for $20,000. All of that together was a sufficient basis for the district court to conclude that the conspirators actually obtained the card numbers and sought. Let me ask you, is there any evidence in the record as to how effective the card skimmers and cameras are? Is the government assuming 100% capture rate? I think it will to answer your question. First, there is no evidence about the error rate or success rate with respect to the individual skimmers. I think it is a sound conclusion by the district court that the defendants were successful, given that they never altered the way in which they executed their conspiracy over this long period of time, during which they demonstrated their sophistication by having all of the tools of the trade and their investment in traveling in the United States and repeating their scheme over and over again. The difficulty with that argument is twofold. One, I which was going to be my question, that presumes that there is 100% success. Simply because they do it again and again, if they were getting 75%, there was nothing that would say, oh, well, then you shouldn't try it again because you will get another 75% or 50%. We don't know. Did somebody stand in front of the camera? Did the skimmer get removed by security? We actually don't know any of that. I am having a little trouble understanding your argument that simply because they kept doing it, that meant there was 100% of that. I think the, your honor, the fact that they were sophisticated and they repeated it, the repetition is important, your honor, because it is reasonable to conclude that someone who had invested this much time and effort into conducting this conspiracy would have changed their methods along the way had it not been successful. In terms of the I think my question really, or the heart of the issue that I have in this case is the same concern as what Judge McKeown articulated. Even if they are, say, 75% successful, the idea of the whole scheme is to maximize the gains. Let's say that the skimmer, and you have to get the pin numbers as well, is not successful 100% of the time, but you happen to be hitting the accounts that have larger balances, you could still realize significant enough gains to make the sort of investment in repeating the scheme that you're talking about. Here, though, there isn't even any sort of expert saying that I would expect that the failure rate would be 10%, 20%, 30%, something like that, I think would close the gap because the guidelines really do contemplate intended loss. Without that sort of evidence, we just don't know. We have to rely on the presumption that the account holder's access basically translates directly into what the defendants really obtained. I don't have a problem with obtaining, possessing part of it. We just don't know how much of it they possessed. Without that evidence rate gap of success rate being filled, there seems to be a logical leap on the government's part. Can you address that issue? Well, I think first, the standard that the government needed to prove this by was clear and convincing, not reasonable doubt. There is a lower burden for the government in this case than at the trial phase. But the circumstantial evidence that the court rightfully relied on about the repetition and the expert way in which the defendant executed their scheme, I think, bridges that gap that your Honor is referring to. So, I guess the bottom line is we don't have any expert testimony. We don't even have bank testimony about a banker familiar with these kind of schemes and how they might work. So, your calculation then depends on the fact, primarily in the fact of repetition, correct? Well, it also relies, yes, it relies on repetition, your Honor, but it also relies on the video evidence, which is undisputed. The numbers of accounts which were accessed during the time the skimmers were in place, which is also undisputed. And past success, at least with regard to some numbers, right? Correct. Yes, your Honor. Past success with actually obtaining card numbers and actually using those card numbers as part of the conspiracy to gather or to raid customer accounts. If the court were to reverse because of this record, you can't get that kind of numbers and enhancement, what would the sentencing proceeding look like? Well, at that point, there would be a resentencing, your would attempt to address the issues if there were issues identified by this court in the sentencing proceeding. I will say the reason why the government was not able to introduce, for example, the actual contents of each and every one of the skimmers that these defendants use as part of occurred and concluded before the government or the bank realized that the skimmers were in place. And so they were uncovered when the bank went back and looked at video surveillance and saw that these defendants had participated in the scheme. The second part, which I don't believe is in the record, but the government was not able to access some of those devices to retrieve the data. So the government presented. And that's the case. I appreciate there was a logistical and evidentiary problem, but that doesn't get you somehow to be able to leapfrog over the current standard, does it? No, I didn't say that, Your Honor, to suggest that it  needed to prove. However, the the undisputed evidence in the pre-sentence report and in the pre-sentence report and the defendant's factual basis satisfy the government's burden to prove by clear and convincing evidence that they actually possess these usable card numbers. Isn't the missing link the fact that there's no conviction on an attempt count? If there had been a conviction on an attempt count as part of the charge, both attempt and successful possession, then all of the records would be before the court at the time of sentencing, the ones that they actually did possess and the ones that they attempted to possess and failed to possess. Isn't that the total universe of what's counted in the numbers that are before the district court for guidelines purposes in this case? Your Honor, I think it's an assumption to say that they that there were attempts that were unsuccessful. That fact isn't in the record. The record is they repeated their scheme over and over again. They were successful on specific instances that they what I'm what I'm what I'm asking is that you have a number of there's a number here of for devices. As I understand that the appellant's position is that there's no clear and convincing evidence that each and every one of those devices was actually possessed successfully by the by the appellant. Had there been a charge of and conviction on attempt, it wouldn't matter if if the appellant was successful, he would be responsible for the for the ones that that were on the skimmer that that for whatever reason he couldn't get the pin number for. Wouldn't that be true? I think the the answer to that, Your Honor, I think is in the guidelines in three F.I. And I see that my time is over, but I'll answer the court's question in three F.I. It requires possession of a unauthorized access device. And so I'm I'm not sure that an attempt would be sufficient to apply the $500 guideline in hand or guideline floor. It would still be a problem. It could be, yes. Thank you. Thank you. Thank you, Your Honor. Ms. Dannett? Thank you, Your Honor. The government keeps harping back to this repetition that the scheme was repeated over and over. But as to Mr. Gabriele Plage, that is not true. He was in the country and a part of the scheme for for 10 days. He gets zero money. The 754 accounts that were accessed while he was involved, none of those people lost any money. So there is no repetition. There is no pattern of success. And so I mean, I think it just increases the difficulty of making that logical link or logical leap between accessing these accounts and having something that was, in fact, actually usable. And I would just if the court doesn't have any further questions, I would ask the court, to the extent possible, these men have a very limited amount of time left to serve. And so if the day is going to be overturned, I would ask the court for the most expedient ruling as is possible under the circumstances. Thank you. Thank you. Your Honor, just to ask Mr. Gaineson. Yes. I think the court's questions indicate that what is crucial here is not whether they possess. It's what it's the number of accounts that were usable. And there is a huge difference between the 37 accounts that the government proved and the 852 that they're asking the court to draw the inference on. So I would just ask the court to read the PSR as almost like jurors to examine whether by clear and convincing evidence that the government has proved the amount of loss. And I would suggest that the court will find that they did not meet that very demanding standard. Thank you. Thank you. I'd like to thank all counsel for your argument this morning. The case just argued United States versus Gainesville Amplage is submitted.
judges: McKeown, Nguyen, Vitaliano